IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michelle M. Hendricks,                )
                                      )
                    Plaintiff,        )   Case No. 1:03-CV-572
                                      )
      vs.                             )
                                      )
Office of the Clermont County         )
 Sheriff, *et al.*,                   )
                                      )
                    Defendants.       )

Memorandum and Order

        Plaintiff initiated this matter after Clermont County
Sheriff Albert J. Rodenberg terminated her employment as a
corrections officer at the Clermont County Jail.  She asserts
claims of sex discrimination, sexual harassment, and retaliation
for opposing sexual harassment in violation of Ohio and federal
law.  She also asserts a claim, pursuant to 42 U.S.C. § 1983,
that Defendants terminated her employment in retaliation for her
exercise of constitutional rights.  She asserts a claim for
malicious prosecution and defamation in violation of the United
States Constitution and a claim of defamation under Ohio common
law.  This matter is now before the Court upon Defendants' motion
for summary judgment with respect to all of Plaintiff's claims
(Doc. 13).

A.   Background

Plaintiff began working as a corrections officer at the Clermont County Jail in October of 1998. Throughout her employment in that capacity, she was one of the few female corrections officers. For the first few years of her employment, the administrators of the Jail considered her to be a good employee.

Plaintiff has testified that fellow corrections officer Brian Grizzel began making sexual comments, propositioning her sexually, and grabbing her genital area on the job sometime before January 2002. She cannot recall when those events occurred. She has testified that she reported such incidents to whichever supervisor was on duty at the time but cannot recall which supervisors might have taken those reports. She has testified that she did not report the incidents in writing. The pre-January 2002 behavior by Mr. Grizzel of which Plaintiff has testified was inarguably hostile to Plaintiff on the basis of her sex, and, while apparently occurring irregularly, the events were sufficient in number to permit a finding that they were more than isolated incidents. Plaintiff avers that her reports to supervisors about Mr. Grizzel's conduct did not result in any corrective measures.

Matters came to a head in January and February 2002. On January 20, 2002, Brian Grizzel handcuffed Plaintiff to a

2

chair in a control room within the Jail, exposed himself to her, and masturbated to ejaculation. Plaintiff did not immediately report the incident. After a fellow female corrections officer reported it anonymously, a sergeant at the Jail questioned Plaintiff, who made a complete written report. Brian Grizzel confessed to the conduct and resigned his employment. Plaintiff filed criminal charges against Grizzel, and those charges resulted in a guilty plea and a conviction.

Plaintiff continued to work at the Jail after the January 2002 incident. She alleges that Defendants' conduct toward her changed after she filed criminal charges against Brian Grizzel, however.

She has introduced evidence that tends to show that Defendant Christopher J. Willis, the senior County official at the Jail, advised her in March 2002 that she could not use holiday or vacation time for an illness when she had used all of her sick leave. Plaintiff alleges that Willis' statement violated Jail policy and was in direct contradiction to early statements to her by other supervisory personnel. Plaintiff does not allege that Defendant Willis permitted male employees to use holiday or vacation leave for illnesses when sick leave had been exhausted. Rather, she alleges only that his statement is evidence of different treatment toward her after she reported the Grizzel incident and filed criminal charges.

Plaintiff also has introduced evidence that tends to show that Defendant Michael McConnell, a supervisor at the Jail, did not apply the usual policy of assigning her to a variety of posts on a rotating basis as he had done prior to February 2002 and as he did for other corrections officers. Plaintiff's evidence suggests that Defendant McConnell assigned her to the same post for long stretches of time.

Plaintiff also has introduced evidence that tends to show that, in August 2002, Defendant McConnell refused her request to use compensatory time to take off two days because her daughter was to undergo surgery. Defendant McConnell told her that she would be required to use sick leave but offered no explanation for this refusal, which Defendant Willis reversed.

Plaintiff has introduced evidence of two incidents that she terms acts of sexual harassment by supervisory personnel after the final Grizzel incident. Both occurred in September 2002.

First, Defendant Willis refused to permit Plaintiff and another female corrections officer, Lynn Cooper, to play on the Jail's softball team at a Fraternal Order of Police tournament. Defendant Willis apparently told the two women that they could be "water girls" but that they could not play because he wanted to win. Another female corrections officer was apparently permitted to play, and Plaintiff offers no evidence with respect to her

softball skills as compared to that officer or any of the male employees who played on the team.

The second incident involved Lieutenant David Barr, who, Plaintiff's evidence tends to show, made the remark in the Jail cafeteria in Plaintiff's presence that "any sport a female plays is not a sport." Plaintiff made a written complaint about the remark, and Defendant Willis conducted an investigation. After completing the investigation, Defendant Willis gave Plaintiff a memorandum attacking her credibility and informing her that he would not "permit [her] to twist the truth in any form."

On October 10, 2002, Defendant Willis suspended Plaintiff, ordered her escorted from the Jail, and initiated termination proceedings against her. On October 11, Defendant Willis sent Plaintiff a letter advising her that she was the subject of an investigation and that she would be on administrative leave status until further notice. Defendant Willis advised Plaintiff that she would not be permitted to have any contact with the Jail or the Sheriff's Office during the investigation. On that date, Defendant Willis sent an e-mail message to the Jail office advising that Plaintiff was not to be called or to be in the building for any reason.

On October 17, 2002, Defendant Willis sent a letter to Plaintiff advising her that he had recommended that her

employment be terminated and listing the offenses with which she was charged.  He accused her of insubordination for refusing on two occasions to turn over a tape recorder she had used to surreptitiously record conversations while on duty, of making false statements suggesting that the Jail administration was following employees while they were off duty, and of failure to observe rules, regulations, and policies.  Defendant Willis advised Plaintiff that a pre-disciplinary conference had been scheduled for October 21.  Plaintiff contends that this letter provided much less detail concerning the charges against her and her rights at the pre-disciplinary hearing than was afforded to other corrections officers who were subject to discipline.  The letters Plaintiff has identified as evidence provide slightly more detail but are addressed to male and female corrections officers alike.

Later on October 17, 2002, Defendant Willis asked Plaintiff to go the Sheriff's Office to answer some questions that Lieutenant Robert Evans wanted to ask her.  Defendant Willis advised her that Lieutenant Evans would inform her of her Garrity rights, referring to Garrity v. New Jersey, 385 U.S. 493 (1967).  Pursuant to Garrity, an employee may be subject to discipline in her employment for refusing to answer questions but any information she provides may not be used against her in any subsequent criminal proceedings.

When Plaintiff arrived at the Sheriff's Office, Lieutenant Evans informed her of her rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), including her right to refuse to answer questions without an attorney present. Plaintiff exercised that right and returned to her home one hour later. When she arrived there, she found an amended notice from Defendant Willis. Added to the charges against her was "Failure to cooperate in a criminal investigation." At his deposition in this matter, Defendant Willis testified that the additional charge had been prompted by Plaintiff's refusal to answer questions posed to her Lieutenant Evans on October 17, 2002. Defendants' counsel immediately requested a break in the deposition, and, after the break, Defendant Willis testified that the additional charge had been prompted by Plaintiff's failure to come forward with information about an investigation into allegations by Jail inmate Katie Tribble that she had been raped by a corrections officer while she was incarcerated.

The incident involving Katie Tribble occurred in August 2002. Ms. Tribble alleged that she was raped by corrections officer Johnny Graham in her cell and left bleeding. Telephone records demonstrate that Ms. Tribble placed numerous telephone calls to Plaintiff's home from her cell in the days immediately after the alleged rape. Plaintiff denies that Ms. Tribble ever told her that she had been raped. Defendants have not identified

7

evidence that Plaintiff did, in fact, have information about the alleged rape that she failed to provide to investigators.

The parties agree that Plaintiff was one of several corrections officers who spread rumors that the Tribble allegations had prompted Jail administration to follow corrections officers when they were off duty and that Jail employees were acting as "moles" in the investigation.  None of the other corrections officers who spread such rumors was subjected to discipline.

Plaintiff has introduced evidence that tends to show that, when Johnny Graham was placed under investigation and suspended as a result of Katie Tribble's allegations, Defendant Willis did not prohibit Mr. Graham from calling the Jail or the Sheriff's Office or being on the premises.  She offers similar evidence concerning treatment of Brian Grizzel after his resignation, but must acknowledge that the situation was different in that Mr. Grizzel was no longer under investigation by the Jail administration at that time.

After the pre-disciplinary hearing, Defendant Rodenberg advised Plaintiff by letter that her employment had been terminated.  He gave three reasons for the termination: "Insubordination for Failing to Turn Over a Tape Recorder as Ordered by Chief Deputy Willis; Subverting the Good Order and Discipline of the Department by Making False Statements Accusing

8

the Administration of Following Employees While They are Off Duty; and, Willful and Wanton Failure to Observe Department Rules, Regulations, Policies, or Rules of Conduct by Failing to Cooperate with a Criminal Investigation." The letter made clear that Defendant Rodenberg was the ultimate decisionmaker with respect to the termination. The Sheriff did not clarify which criminal investigation was the subject of the third basis for the termination.

Plaintiff grieved the termination and, after arbitration, was reinstated without backpay upon the arbitrator's finding that her misconduct was serious but, in essence, that poor management of the Jail had contributed. Apparently for health reasons, Plaintiff did not resume her employment after the arbitrator reinstated her.

In December 2002, some two months after the termination of her employment, Plaintiff was in AJ's Bar in Amelia, Ohio, when she encountered Defendant McConnell. Defendant McConnell was off duty at the time and was out of uniform. After their encounter, Defendant McConnell accused Plaintiff of grabbing his genitals through his clothes. He reported the incident to the Sheriff's Office, which investigated but did not bring charges because of a lack of corroborating evidence.

In April 2003, Defendant Rodenberg gave an interview to a reporter from the Clermont County *Community Journal* newspaper

regarding the outcome of an FBI investigation into the Katie
Tribble allegations.  The resulting article included a quote from
Defendant Rodenberg that "[a] female corrections officer was
fired after she lied during the investigation into one of the
three male officers [for violating policies regarding
interactions between inmates of the opposite sex]."  Plaintiff
alleges that she was the only female corrections officer fired
during the relevant time period and that Defendant Rodenberg's
statement clearly referred to her.  She notes that none of the
Defendants ever accused her of lying and that lying was not a
reason given for the termination of her employment.

Plaintiff asserts six causes of action.  First, she
alleges that Defendants are liable for sexual harassment in
violation of Title VII, 42 U.S.C. §§ 2000-e, *et seq.*, and Ohio
Revised Code ("O.R.C.") §§ 4112.02 and 4112.99.  She next alleges
that Defendants are liable for retaliation and retaliatory
harassment in violation of those same provisions.  She further
alleges that Defendants are liable for discriminatory discharge
on the basis of sex in violation of those provisions.  Her fourth
cause of action arises from her allegation that one basis for the
termination of her employment was her exercise of constitutional
rights by refusing to answer questions posed to her by Lieutenant
Robert Evans after he had advised her of her Miranda rights.  She
asserts that claim pursuant to 42 U.S.C. § 1983 and the Fifth

Amendment.  She asserts a claim pursuant to § 1983 against
Defendant McConnell for malicious prosecution and defamation
related to the December 2002 incident at AJ's Bar.  Finally, she
asserts a claim of defamation under Ohio common law against
Defendant Rodenberg for the statement he made to the *Community
Journal* reporter in 2003.  Defendants seek summary judgment,
pursuant to Rule 56 of the Federal Rules of Civil Procedure, with
respect to all of those claims.

    B.   <u>The Summary Judgment Standard</u>

      Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be
drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654
(1962).  "The mere existence of <u>some</u> alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly

12

regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits

13

or similar materials negating the opponent's claim. Id. Rule
56(a) and (b) provide that parties may move for summary judgment
"with or without supporting affidavits." Accordingly, where the
non-moving party will bear the burden of proof at trial on a
dispositive issue, summary judgment may be appropriate based
solely on the pleadings, depositions, answers to interrogatories,
and admissions on file.

   C. Analysis

      1. Discrimination, Harassment, and Retaliation

      Plaintiff does not allege that Defendants discharged
her and replaced her with a male corrections officer. She
alleges, rather, that she was discharged for conduct that did not
result in discipline when male corrections officers engaged in
it.

      Plaintiff's sexual harassment claim is based upon the
conduct of Brian Grizzel culminating in his criminal activity on
January 20, 2002. Plaintiff alleges that Defendants were aware
that Mr. Grizzel had been harassing her but took no action until
after he assaulted her. She also alleges that Defendant Willis'
failure to permit her to participate in the Fraternal Order of
Police softball tournament in September 2002 and Lieutenant
Barr's comment about women and sports amount to actionable sexual
harassment.

Plaintiff's retaliation claim is based upon the changes in her treatment at Defendants' hands after she complained of Brian Grizzel's criminal conduct and, especially, after she filed criminal charges against him. She alleges that she was subjected to harsher treatment than she had been prior to the filing of those charges and that she was treated differently from other corrections officers.

a. Discrimination

Plaintiff observes that Defendant Rodenberg provided three reasons for the termination of her employment: her insubordination in refusing to turn a tape recorder over to Defendant Willis, her spreading rumors about Jail administrators following off-duty employees and using employees as "moles," and her failure to cooperate in a criminal investigation. She has introduced evidence that tends to show that Defendants did not require male corrections officers to turn over tape recorders when they were known to be carrying them. She further observes that Defendants have acknowledged that other corrections officers were spreading rumors at the same time Plaintiff was and that those officers were not subjected to discipline. Finally, she observes that, at the same time as she was discharged for failing to come forward with information about the Johnny Graham/Katie

Tribble matter[1], Defendants were offering amnesty to any other corrections officer who might have had information and failed to come forward earlier. It is on those grounds that Plaintiff asserts that her discharge was an act of sex discrimination.

Plaintiff asserts her sex discrimination claim under both Title VII and Ohio statutory law. The standard applicable to claims of disparate treatment was clarified in this circuit by Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992). In order to establish a *prima facie* case under Mitchell, a plaintiff must introduce evidence that tends to show that she was treated less favorably than similarly-situated non-protected employees. See id. at 582. In order to do so, a plaintiff must identify evidence that tends to show, inter alia, that she is similarly situated in all material respects to the employees to whom she compares herself. See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999). The United States Court of Appeals for the Sixth Circuit has stated that in order to establish a *prima facie* case, a plaintiff must show that the employees to whom she compares herself were similarly-situated in all relevant respects. See Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). See also Ercegovich v. Goodyear Tire &

---

[1]By making this argument, Plaintiff apparently does not concede that it was, in fact, her failure to cooperate in the Graham/Tribble investigation that resulted in her discharge. Plaintiff's contention is that Defendants did not advise her at the time of her discharge which investigation was the basis for the third reason set forth in Defendant Rodenberg's letter.

Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). The burden of proof with respect to the issue of comparability rests upon Plaintiff, who must "produce sufficient affirmative evidence to establish that the . . . employees with whom []he compares [his] . . . treatment were 'similarly situated. . . .'" Mitchell, 964 F.2d at 583. The same standards apply generally to claims of disparate treatment based upon the Ohio anti-discrimination statute. See Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission, 66 Ohio St.2d 192, 196 (1981)(regarding Ohio law).

Plaintiff's disparate treatment sex discrimination claim fails to the extent that it is based upon the second and third reasons cited by Defendant Rodenberg in his termination letter: the spreading of rumors and the failure to cooperate with an investigation. The evidence upon which Plaintiff relies to establish that other employees who spread the same rumors were not subjected to discipline also establishes that those other employees included male and female corrections officers. Accordingly, Plaintiff cannot establish that the difference in treatment was based upon sex. She cannot satisfy the standard enunciated in Mitchell, supra, with respect to discipline for spreading rumors.

Plaintiff denies that she had information that could have been useful in the investigation of Katie Tribble's

17

allegations against Johnny Graham.  She cannot prove, however, that Defendants did not actually believe that she had such information.  Defendants' belief was based upon telephone records demonstrating that Ms. Tribble had made some seventy telephone calls to Plaintiff's home in the time period surrounding the alleged rape.  Plaintiff has not alleged that Defendants' failure to credit her disavowal of knowledge about the incident was based upon her sex.  Moreover, she has not introduced evidence that tends to show that male corrections officers were disciplined less severely when Defendants concluded that they had failed to cooperate in criminal investigations.

Plaintiff argues that she was treated differently in that other officers were offered amnesty for previous failures to come forward with information about the Tribble incident while Plaintiff was discharged.  Her claim fails, to the extent that it is based upon that distinction, for two reasons.  First, the blanket offer of amnesty was directed at all other corrections officers, male and female, eliminating sex as the basis for Plaintiff's exclusion from the offer.  Second, Plaintiff has not identified evidence tending to show that Defendants had a basis for believing that any other corrections officer had withheld relevant information.  In other words, on the basis of the evidence identified by the parties, Plaintiff's position was different from those of all of the other corrections officers,

not because she was a woman, but because Katie Tribble had called her home from her cell on seventy occasions while she had not, apparently, called the homes of the other corrections officers.

Plaintiff's allegation that she was subjected to different treatment for refusing to turn over the tape recorder is not as easily dismissed.  Defendants are quick to point out that Plaintiff was discharged for the insubordinate refusal rather than for having the tape recorder, but they have not addressed Plaintiff's contention that she was treated differently in that she was asked to turn over the tape recorder, at the risk of discipline for her refusal, while male corrections officers were permitted to carry tape recorders.

Plaintiff has offered evidence that tends to show that Defendants were aware that some male corrections officers had carried tape recorders and that Defendants had not required them to turn the recorders over to Jail administrators.  She has, therefore, identified an issue of fact as to whether she was treated differently by not being permitted to carry and use a tape recorder while male corrections officers were.  Plaintiff's sex discrimination claim is explicitly a claim for discriminatory discharge, however.  The basis for the discharge was insubordination and not carrying a tape recorder.  Plaintiff has not identified evidence that tends to show that male corrections officers were subjected to less severe discipline for acts of

19

insubordination than was Plaintiff.  Her discriminatory discharge
claim, therefore, fails, even though she has demonstrated that
she may have been treated less favorably than were male
corrections officers in at least one condition of her employment.
For those reasons, the Court concludes that Defendants are
entitled to summary judgment with respect to Plaintiff's sex
discrimination claim based upon her discharge.

> b.  Harassment

Plaintiff's claim of sexual harassment is based
primarily upon the conduct of Brian Grizzel up to and including
the assault that led to his resignation and Plaintiff's
initiation of criminal charges against him.  She also alleges
that she was subjected to harassment by Defendant Willis and
Lieutenant Barr in September 2002 in the softball tournament and
women-in-sports comment situations.

In order to establish a *prima facie* case of sexual
harassment based upon a hostile work environment created by the
actions of a non-supervisory co-worker, a plaintiff must
demonstrate the following:

(1)  that she is a member of a protected class;

(2)  that she was subjected to unwelcome sexual
     harassment;

(3)  that the harassment was based on her sex;

(4) that the harassment unreasonably interfered with her work performance and created a hostile work environment; and

(5) that the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

See Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872 (6th Cir. 1997), cert. denied, 522 U.S. 410 (1998); Fleenor v. Hewitt Soap Co., 81 F.3d 48, 50 (6th Cir.), cert. denied, 519 U.S. 863 (1996).  When the offending employee is a supervisor, a sexual harassment plaintiff need not establish the fifth element of the *prima facie* case as set forth above.  Rather, in cases such as the present action in which the plaintiff does not allege that the sexual harassment took the form of a tangible job detriment[2], a plaintiff need only introduce evidence to satisfy the other four elements of the *prima facie* case.  Then, the burden shifts to the defendant to establish an affirmative defense by the preponderance of the evidence.  See Faragher v. Boca Raton, 524 U.S. 775, 807 (1998):

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to

---

[2]Plaintiff does allege that she suffered adverse employment actions in connection with the alleged sexual harassment.  She makes those allegations in the context of her sex discrimination and retaliation claims, however.  She does not allege that she suffered an adverse employment action or other tangible job detriment as a result of her failure to accede to a sexual demand.

> take advantage of any preventive or
> corrective opportunities provided by the
> employer or to avoid harm otherwise.

The Supreme Court further stated that proof of an anti-harassment policy with a complaint procedure is evidence in satisfaction of the first element of the defense. See id. The employer's burden under the second element of the defense is "normally" satisfied by proof that an employee failed to use any complaint procedure provided by the employer. See id.

The Court must first determine whether Plaintiff can establish a *prima facie* case of sexual harassment by Brian Grizzel. The parties are in apparent agreement with respect to the first and third elements of the *prima facie* case. Plaintiff, a female corrections officer, is a member of the class protected by the statutes she invokes. See Blankenship, 123 F.3d at 872, as modified in accordance with Faragher, 524 U.S. at 807. The conduct Plaintiff alleges Brian Grizzel to have directed toward her was unequivocally based on her sex. See id. The parties' disagreement with respect to Plaintiff's sexual harassment claim, to the extent that it is based upon Brian Grizzel's conduct, relates to the second, fourth, and fifth elements of the *prima facie* case.

Defendants do not argue that Plaintiff invited the assault by Brian Grizzel in January 2002 that led to his resignation. They suggest, however, that Plaintiff had

22

participated in horseplay and crude talk at the Jail in the years prior to that attack and that Grizzel's alleged earlier sexual talk and conduct toward the Plaintiff was simply a part of that banter and horseplay in which Plaintiff also participated. The Court finds that suggestion to be insupportable on the record as it now stands.

The Court is well aware that the conduct of a sexual harassment plaintiff may be relevant evidence in the inquiry into whether the alleged perpetrator's behavior amounted to severe and pervasive uninvited harassment and whether it actually interfered with the plaintiff's work performance. See Meritor Savings Bank v. Vinson, 477 U.S. 57, 69 (1986). The Court is persuaded, however, that unless the issues of invited conduct and interference with work performance are unassailably resolved by virtue of evidence of the plaintiff's own conduct, the matters are properly assigned to the finder of the facts for resolution. In this case, the evidence does not unequivocally prove that Plaintiff welcomed Brian Grizzel's pre-January 2002 sexual conduct or that the same conduct did not interfere with her work performance. The Court observes that Plaintiff testified at her deposition that Grizzel called her so frequently on the job that she asked other corrections officers to answer her telephone. She testified that the telephone calls were sexual in nature, that Mr. Grizzel would call and ask her to "talk dirty" to him.

A finder of fact could well conclude that such conduct interfered with Plaintiff's work performance.

Defendants also argue that the pre-January 2002 conduct by Brian Grizzel of which Plaintiff complains was not sufficiently severe or pervasive to constitute actionable sexual harassment. They note that, in order to give rise to liability, the conduct must have been sufficiently severe or pervasive to have altered the conditions of Plaintiff's employment. See Harris v. Forklift Systems, Inc., 510 U.S. 17,21 (1993). Defendants note that the relevant factors "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. They contend that the conduct of which Plaintiff complains was *de minimis* and not actionable in light of the standards enunciated in Harris. See Jacklyn v. Schering-Plough Healthcare Products, 176 F.3d 921, 930 (6th Cir. 1997).

The Court is not prepared to hold, as a matter of law, that the pre-January 2002 conduct by Brian Grizzel of which Plaintiff complains was *de minimis* and insufficiently severe or pervasive to constitute actionable sexual harassment. Some of that conduct amounted to assault, and the sexual comments Plaintiff attributes to Grizzel were offensive in the extreme,

even to a person of average sensibilities.  In short, the Court
is not persuaded that Defendants are entitled to summary judgment
with respect to Plaintiff's sexual harassment claim, to the
extent that it is based upon pre-January 2002 conduct by Brian
Grizzel, on the ground that the conduct was *de minimis*.

The Court is persuaded, therefore, that Plaintiff has
identified evidence that satisfies the second and fourth elements
of the *prima facie* case of sexual harassment with respect to
Brian Grizzel's conduct.  See Blankenship,  123 F.3d at 872, as
modified in accordance with Faragher, 524 U.S. at 807.  In order
to establish a *prima facie* claim on the basis of the conduct of
Brian Grizzel, however, she must also identify evidence
suggesting that Defendants knew or should have known about the
conduct and failed to implement prompt and appropriate corrective
action.  See id.

In that regard, the parties apparently agree that the
critical inquiry is not into Defendants' response to the January
2002 assault, which, when Defendants learned of it, resulted in a
prompt investigation and the resignation of Brian Grizzel.
Defendants contend that the inquiry into the fifth element of the
*prima facie* case is complete on the basis of those facts.
Plaintiff, on the other hand, contends that Defendants are liable
to her for sexual harassment, in spite of the resignation of
Brian Grizzel immediately after the commencement of the

investigation into the January 2002 assault because they did not act upon her earlier reports of sexually harassing conduct by Grizzel.

The Court first observes that, in response to Defendants' motion for summary judgment, Plaintiff has not identified evidence that tends to show that Defendant Rodenberg knew or should have known about that conduct. Defendant Willis was the ranking officer at the Jail, and Plaintiff has not identified evidence suggesting that Defendant Rodenberg would, in the ordinary conduct of affairs, have learned of oral complaints of co-worker harassment within the Jail. The evidence of Defendant McConnell's knowledge or authority to take corrective action is equally non-existent in the record. They are, accordingly, entitled to summary judgment with respect to Plaintiff's sexual harassment claim to the extent that it is based upon Brian Grizzel's conduct.

Defendants have not argued, however, that the Sheriff's Office, as the governmental entity charged with the administration of the Jail, is not charged with knowledge of matters reported to its supervisory personnel. Plaintiff's evidence supports her contention that she reported the earlier incidents of Grizzel's harassment to Jail supervisors and that they took no corrective action. That evidence satisfies the

final element of the *prima facie* case as far as Plaintiff's claim against the Sheriff's Office itself is concerned.

Defendant Willis' status as the Jail administrator differs from Sheriff Rodenberg's. He is clearly not subject to liability under Title VII on the basis of his supervisory capacity. See Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997). Ohio courts have interpreted the parallel Ohio statute to include supervisory liability. See Genaro v. Central Transport, Inc., 84 Ohio St.3d 293, syllabus (1999). Such liability is limited to that arising from the supervisor's own discriminatory conduct, however. See id. The Court finds no legal support for Plaintiff's argument that Defendant Willis is individually liable for Brian Grizzel's sexually harassing conduct.[3]

Defendants have not established as a matter of law that the Sheriff's Office is shielded from liability by virtue of its maintenance of an anti-harassment policy or Plaintiff's failure to avail herself of the opportunity to report Brian Grizzel's pre-January 2002 actions in accordance with that policy. See Faragher, 524 U.S. at 807. The evidence of the existence of the policy is one-sided, and Defendants can prove that Plaintiff had been advised of the policy. Plaintiff has testified, however,

---

[3]In any event, Plaintiff has not identified evidence that tends to show that Defendant Willis was personally aware of her oral complaints to supervisors about Brian Grizzel's pre-January 2002 behavior.

that she availed herself of the opportunity of complaining to supervisors about Grizzel's conduct, and such complaints are one of the avenues of redress available under the pertinent policy. Accordingly, Defendants are not entitled to summary judgment on the basis of the affirmative defense.  See id.  For those reasons, the Court concludes that Defendant Office of the Clermont County Sheriff is not entitled to summary judgment with respect to Plaintiff's sexual harassment claim to the extent that the claim is based upon the conduct of Brian Grizzel.

Plaintiff has also based her sexual harassment claim upon two incidents in September 2002 involving supervisory personnel.  One is Defendant Willis' refusal to permit her to participate in the Fraternal Order of Police softball tournament. The other is Lieutenant Barr's comment about women in sports. The Court is convinced that Plaintiff may not establish liability on the part of any of the Defendants on the basis of those two incidents.

As the Court has noted, Defendant Willis permitted another female corrections officer to play on the Jail's softball team.  His comment in refusing Plaintiff's request to be permitted to play was that he wanted to win.  That comment is gender-neutral.  The fact that Defendant Willis permitted another female employee to play erases any possible inference that Plaintiff's gender was the basis for her exclusion and,

consequently, that the exclusion was a form of derogation of the Plaintiff on the basis of her sex. The evidence introduced by Plaintiff does not, therefore, satisfy the third element of the *prima facie* case of sexual harassment, that the harassment was based upon the plaintiff's sex. See <u>Blankenship</u>, 123 F.3d at 872.

Lieutenant Barr's comment was derogatory to women in general. Plaintiff has not, however, identified evidence that tends to show that it interfered in any way with her work performance. It does not, therefore, satisfy the fourth element of the *prima facie* case of sexual harassment. <u>See</u> <u>id</u>. The comment constitutes the classic sort of *de minimis* harassment that is not actionable. <u>See</u> <u>Jacklyn</u>, 176 F.3d at 930. Accordingly, Plaintiff may proceed on her sexual harassment claim only to the extent that it is based upon the actions of Brian Grizzel and asserted against the Office of the Clermont County Sheriff.

### c. Retaliation

Plaintiff's retaliation claim stems from alleged harassment she endured after she reported the assault by Brian Grizzel and filed criminal charges against him. She also alleges that her October 2002 discharge from employment was motivated by retaliatory animus on the part of Defendants. In addition to the

ultimate termination of her employment, Plaintiff alleges that conduct by Defendants McConnell and Willis amounted either to retaliatory harassment or to evidence of retaliatory animus. Specifically, she points to Defendant Willis' refusal, in March 2002, to permit her to use holiday or vacation leave when she had exhausted sick leave. She has introduced evidence showing that this refusal constituted a change in policy toward her as well as a refusal to apply generally applicable policies to her.

Plaintiff also points to Defendant McConnell's refusal to permit her to work a variety of posts as other corrections officers were permitted to do. While Defendants have argued that working long stretches of time in a particular station was not unique to Plaintiff's employment, they have not attempted to demonstrate that Defendant McConnell was motivated by necessity in Plaintiff's case. The record is silent with respect to his motivation.

Plaintiff also notes that Defendant McConnell refused her request to use compensatory time she had accumulated when her daughter required surgery. Evidence identified by Plaintiff suggests that his refusal was in direct contravention of Jail policy. Defendant Willis reversed the refusal. Defendants have not attempted to elucidate the motivation for Defendant McConnell's actions.

Relying upon an excerpt from the deposition testimony of Defendant Rodenberg, Plaintiff also argues that Defendant Willis' retaliatory animus toward her is evident from his numerous reports to Defendant Rodenberg about Plaintiff's allegedly poor performance, attitude, and respect for authority. The cited portions of that testimony do not establish the time frame to which the statements relate.

A careful review of Defendants' motion for summary judgment demonstrates that they have not specifically argued for summary judgment with respect to Plaintiff's retaliation claim. While their motion purports to be for judgment with respect to all of Plaintiff's claims, therefore, it is not well-taken with respect to the retaliation claims under Title VII and Ohio law.

### 2. Plaintiff's <u>Miranda</u>-based Claim

Plaintiff's fourth cause of action, asserted against all Defendants, is based upon her exercising rights recognized in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), at her pre-disciplinary hearing and the subsequent termination of her employment. Plaintiff alleges that she was discharged for exercising a constitutional right.

The parties' disagreement with respect to the fourth cause of action centers upon the correct identification of the criminal investigation in which Plaintiff allegedly failed to

participate, resulting in some measure in the termination of her employment. They agree that Defendant Rodenberg listed her failure to cooperate in a criminal investigation as one of the reasons for her discharge. Defendants argue, and have offered some evidence tending to show, that the investigation in question was the Sheriff's Office's investigation into Katie Tribble's rape allegation against Johnny Graham. Plaintiff notes that the amendment of Defendant Willis' notice to her to include the failure-to-cooperate charge occurred within hours of her exercising her <u>Miranda</u> right to refuse to answer questions outside the presence of her attorney and also that Defendant Willis initially testified at his deposition that the investigation in question was into possible criminal conduct by Plaintiff.

The Court finds several aspects of Defendants' arguments in this regard puzzling. Defendants argue strenuously that the criminal investigation in question was into conduct by Johnny Graham, yet they offer no explanation for the fact that Plaintiff was advised of her <u>Miranda</u> rights before questioning began. Defendants are certainly aware that <u>Miranda</u> warnings are afforded to a person who is about to be asked questions, the answers to which have the potential for self-incrimination. If no investigation into possible criminal conduct by Plaintiff was contemplated, why were the <u>Miranda</u> warnings necessary?

32

The Court is nearly persuaded that Defendants believed that Plaintiff had withheld information about criminal conduct by another corrections officer and were concerned that she might implicate herself for failing to report a crime when she had a duty to do so and that they would be prohibited from using her statements because they were self-incriminatory and made without her having been advised of her constitutional rights.  If that is the case, Defendants' denial of an investigation into possible criminal activity by Plaintiff is just hollow semantics.  They were investigating her conduct as it pertained to knowledge of the conduct of Johnny Graham.

Another troubling aspect of Defendants' argument is that they apparently fail to account for the fact that Plaintiff exercised her supposed right to refuse to answer questions only after she had been advised that she had the right to do so. Whether or not she was the target of the investigation in question, they advised her that she had the right to refuse to answer questions without an attorney present and then terminated her employment, in part, for exercising that right.  That analysis applies equally whether Johnny Graham was the sole target of the investigation or both he and Plaintiff were the subjects of separate, related investigations.

Very little doubt can remain that the third basis stated by Defendant Rodenberg in Plaintiff's termination letter

related to her refusal to answer questions at her pre-disciplinary hearing, whatever the subject of those questions. Defendants may have grouped that refusal with Plaintiff's previous failure to come forward with information they believed she had, but they did not include the failure to cooperate in a criminal investigation as a reason for the termination of her employment until after she refused to answer questions at the pre-disciplinary hearing. Moreover, Defendants have not denied that the questioning officer gave Plaintiff the <u>Miranda</u> warnings prior to initiating questioning on that occasion. Plaintiff has identified at least a factual issue. In the Court's analysis, the sole remaining issue in the context of Defendants' motion for summary judgment is whether Plaintiff may establish liability for the termination of her employment on the basis of her exercise of a right guaranteed under <u>Miranda</u> when Defendants had specifically advised her of that right just before she exercised it.[4]

Defendants have not argued that the law would not support liability in the event that Plaintiff proves the facts she has alleged. They have not argued for summary judgment in favor of any of them individually on any ground. The sole basis for their motion with respect to Plaintiff's fourth cause of

---

[4]The Court recognizes that an issue could be made of the fact that Plaintiff has apparently asserted this claim against all Defendants while she has not alleged that Defendant McConnell was involved in any fashion in the events giving rise to the claim. The Court assumes, however, that Plaintiff did not intend to name Defendant McConnell with respect to her fourth cause of action and will proceed on the basis of that assumption unless Plaintiff clarifies matters to the contrary prior to the trial of this matter.

action is that Plaintiff cannot prove that they terminated her employment "because she exercised her right to remain silent during her interview with Lt. Evans."  They argue that the evidence of record "make[s] it clear that the failure to cooperate with a criminal investigation arose out of plaintiff's failure to provide anyone, especially Sheriff Rodenberg with whom she met on September 17, with information regarding her relationship with inmate Katie Triable."  Because the Court concludes both that Defendants have not established as a matter of law that Plaintiff's refusal to answer questions at her pre-disciplinary hearing played no role in her discharge and that Defendants have not established as a matter of law that the Katie Tribble matter was not to have been the subject of those questions, the Court is not persuaded that Defendants are entitled to summary judgment on the basis asserted.

### 3. Plaintiff's Malicious Prosecution and Defamation Claim against Defendant McConnell

Plaintiff asserts her fifth cause of action, pursuant to 42 U.S.C. § 1983, against Defendant McConnell.  She alleges that Defendant McConnell violated rights guaranteed to her by the United States Constitution when he reported that she had assaulted him at AJ's Bar in December 2002.

Defendants have astutely identified the most pertinent precedent, <u>Redding v. St. Eward</u>, 241 F.3d 530 (6th Cir. 2001).

Plaintiff can succeed on this claim, which she asserts under
federal constitutional law exclusively, only by proving that
Defendant McConnell was acting under color of state law when he
reported the alleged assault by Plaintiff. See id. at 533.
Because the evidence of record unequivocally establishes that
Defendant McConnell was off-duty and out of uniform at the time
and that he did not arrest, restrain, or attempt to restrain
Plaintiff or to direct the ensuing investigation, Plaintiff
cannot establish that he was acting under color of state law.
See id. His action in making the report was "functionally
equivalent to that of any private citizen." Id. Defendant
McConnell is entitled to summary judgment with respect to
Plaintiff's fifth cause of action for that reason.

> 4. Plaintiff's Defamation Claim against Defendant
> Rodenberg

Plaintiff asserts her final claim against Defendant
Rodenberg only. She alleges that he defamed her when he stated
to a reporter for the *Community Journal* in 2003 that a female
corrections officer had been fired from the Clermont County Jail
for lying during the Katie Tribble investigation. Plaintiff
alleges that she was the only female corrections officer to have
been discharged during the relevant time period so that her
identity as the subject of the comment was easily ascertainable.
She observes that lying was not one of the articulated bases for

36

the discharge. In other words, she alleges that Defendant Rodenberg's statement was false.

Defendant Rodenberg seeks summary judgment with respect to the defamation claim, which Plaintiff asserts under Ohio common law, on two bases. He argues that the statement upon which the claim is based was true and that the article did not identify Plaintiff.

Defendant Rodenberg's first contention is not supported by the evidence. Lying was not one of the bases he stated for Plaintiff's termination. Defendants' counsel's attempts to use Plaintiff's negative response to a broad question directed to her by Rodenberg in a wholly unrelated context about whether she had anything else to report as evidence that Plaintiff had, in fact, lied by failing to report Katie Tribble's telephone calls to her home. Nothing about the context in which that negative response was given suggests that Plaintiff was dissembling. The context clearly indicates that Plaintiff would reasonably have believed that Defendant Rodenberg was asking her whether she had any other reports of sexual harassment to make. Defendant Rodenberg's argument that Plaintiff cannot prove the falsity element of the defamation claim fails. See Hahn v. Kotten, 43 Ohio St.2d 237, 243 (1975).

His argument that he is entitled to summary judgment because the *Community Journal* article did not specifically

identify Plaintiff is equally unavailing.  The parties agree that
a party who has not been specifically identified in an allegedly
defamatory statement may, nevertheless, establish liability if
her identify is readily ascertainable for the content and context
of the statement.  See Rogers v. Buckel, 83 Ohio App.3d 653, 660
(Cuyahoga Cty. 1992).  Plaintiff alleges that her identity is
readily ascertainable, and Defendant Rodenberg offers no evidence
to the contrary.  Where the court is unable to state as a matter
of law that a plaintiff's identity is not readily ascertainable,
the issue "whether the evidence establishes, with convincing
clarity, proof of [the plaintiff's] identity as the person about
whom the disparaging statements are made" is a "jury question."
Id.  Accordingly, Defendant Rodenberg is not entitled to summary
judgment with respect to Plaintiff's defamation claim on the
bases asserted.

    D.  Analysis

        For the reasons set forth herein, Defendants' motion
for summary judgment (Doc. 13) is hereby **GRANTED,** in part, and
**DENIED,** in part.  The motion is **GRANTED** with respect to
Plaintiff's sex discrimination claim in its entirety; her sexual
harassment claim except to the extent that it is asserted against
the Office of the Clermont County Sheriff and based upon the
conduct of Brian Grizzel; her claim that her termination was

based upon her exercise of rights guaranteed by the Constitution as identified in <u>Miranda v. Arizona</u>, <u>supra</u>, only to the extent that the claim may have been asserted against Defendant McConnell; and her claim, asserted under 42 U.S.C. § 1983, that Defendant McConnell maliciously prosecuted and defamed her.  This matter will proceed on Plaintiff's sexual harassment claim against the Office of the Clermont County Sheriff; her retaliation claim, asserted under Title VII and the parallel Ohio statute, against all Defendants; her <u>Miranda</u>-based claim against all Defendants with the exception of Defendant McConnell; and her defamation claim, asserted under Ohio common law, against Defendant Rodenberg.

        **IT IS SO ORDERED.**

                                                                /s/
                                      Sandra S. Beckwith, Chief Judge
                                      United States District Court